for the final case. Mr. Harrington, did you hear my explanation to other counsel about your five reserved minutes? I did, Your Honor. Okay. So you know the ground rules. Go ahead. Thank you. Good morning. May it please the Court. John Harrington for Petitioner Robert Smith. On remand from this Court, the Merit Systems Protection Board erred in sustaining the remaining specifications of Charge 3 against Mr. Smith. Charge 3 should have been found not sustained by the administrative judge for the same failures of proof as caused this Court to vacate one of the other specifications of Charge 3. More broadly, the A.J. on remand erred in finding Mr. Smith's removal was reasonable. The A.J. again ignored the significant context underlying Mr. Smith's conduct as it's charged in specifications in Charge 1. And that context primarily involves the position description that was awarded to Mr. Smith by GSA as part of a resolution of a grievance Mr. Smith had against GSA. He was given unusual latitude in that position description. The position description specifically said he was under administrative supervision. Mr. Harrington? Yes, Judge. This is Wallach. If we find that the administrative judge erred in his analysis of the first two car factors, do we get to the third car factor? A third car factor, Judge, if I understand is a lack of comparator evidence. Certainly, I think that an analysis of car factor 3 certainly gives additional weight to the argument that Mr. Smith's removal should be reversed. The agency did present no comparator evidence, and it should bear the risk of producing no evidence that others who had not engaged in whistleblowing had been treated similarly. And the A.J. certainly erred in finding that factor neutral. So we believe if it's considered at all, it adds weight to Mr. Smith's argument that his removal should be reversed. Go ahead. But again, I'm turning to the remaining specifications of Charge 3. They suffer from the same failures of proof that led this court to vacate one of the other specifications of that charge, and the same logic and analysis applies there. Reconsideration of those specifications are not foreclosed by the law of the case doctrine. This court instructed the board to determine whether Charge 3 as a whole may be sustained, given its vacating of one of the specifications, and the board requested briefing specifically on that issue. And the board erred in not finding that the remaining specifications of Charge 3 should not be sustained. And again, going to the reasonableness of removal, I just wanted to finish my thought regarding Mr. Smith's position description, which is critical here. He was given the ability to independently design and carry out his work, and was specifically given the ability to respond to that position description, and Mr. Smith exercising his discretion under it, the GSA issued and reissued a nondisclosure directive at him that itself is arguably a prohibited personnel practice that required him to receive pre-approval from his immediate management chain before he disseminated any communications more broadly within GSA and it directly contradicted his position description and led to the comments that are cited against him and its specifications under Charge 1. And those charges almost all relate specifically to Mr. Smith pushing back on his supervisors with regard to what he considered an inappropriate imposition of that nondisclosure policy and, you know, limiting him from exercising the discretion that was given to him in his position description. So we believe all of Charge 1 should have been reconsidered, and the judge, A.J., again, failed to consider the strength of the evidence on the part of Mr. Smith, his countervailing evidence, ignored the strong evidence on Mr. Smith's part of management's motive to retaliate, even though the decision makers in Mr. Smith's removal were not directly implicated in his protected disclosures of which he made numerous protected disclosures. Even though they weren't directly implicated, they certainly were part of the management that was being criticized and they had a motive to retaliate, particularly, you know, given Julia Foles, the decision maker's email of GSA needed to take action immediately against Mr. Smith and that they were embarrassed that he's representing OCFO, which, again, is strong evidence of motive to retaliate. And Mr. Smith disclosed mismanagement, which he believed was costing GSA and taxpayers billions of dollars. He communicated those concerns to high-level management throughout GSA on numerous occasions. His managers knew of those disclosures, expressed embarrassment about them, and tried to stop the disclosures by issuing the nondisclosure directive that directly contradicted his position description. And, again, we've spoken to CAR Factor 3 already, the lack of comparator evidence, and the agency, again, bears the risk of presenting no evidence with regard to comparators. So, in conclusion, the AJ erred in sustaining the remaining specifications of Charge 3, which suffered from the same failures of proof as the vacated specification. And, in any case, the remaining two specifications, at most, would warrant some sort of reprimand of Mr. Smith, even if they were found to be false. It ignored the significant context to Mr. Smith's conduct that underlies all of the specifications in Charge 1, particularly the efforts to restrict his duties and to retaliate against him through the use of that nondisclosure policy. And the agency did not meet its burden to show, by clear and convincing evidence, that it would have removed Mr. Smith absent his protected disclosures. The AJ ignored evidence of motive to retaliate, didn't consider and didn't properly consider the consequences on the part of the agency of that lack of comparator evidence. So, we believe... And I guess, this is Judge Stoll, on that CAR Factor 3, are you suggesting that the board defined similarly situated employees too narrowly? I'm sorry, Judge, am I asking you to define it too narrowly or that it has been defined too narrowly? If it has been defined too narrowly. Well, I mean, certainly the agency has the burden to present some evidence that others have been disciplined for what it considers unprofessional or insubordinate communications, and they presented no such evidence, even taking, you know, identifying comparators broadly. There's just no evidence presented by the agency that it had taken similar actions against anyone who had not engaged in whistleblowing. I hope that answers your question, Judge. Well, I just wanted to know if you had an argument that the board defined or the agency defined similarly situated too narrowly in looking at CAR Factor 3. And it sounds like your primary argument is simply that the government didn't produce evidence, so this factor should be weighed in your favor. Yes, Judge. The AJ erred in finding that factor neutral, but as with the other specifications and other charges, there was a lack of real analysis on the part of the AJ, and that was kind of a conclusory finding that the factor was neutral. And, you know, it's hard to really assess the AJ's reasoning there, because, again, there was a lack of a full discussion and certainly a lack of any analysis of Mr. Smith's countervailing evidence, as there was... What would you have wanted the AJ to further discuss? With regard to that particular factor, Judge, I think the absence of evidence probably doesn't support a detailed discussion, so perhaps my point doesn't apply with regard to CAR Factor 3 as much as it does to some of the other areas. But certainly in terms of the context of all of the specifications under Charge 1, I think that's really where the AJ's lack of discussion and lack of analysis of Mr. Smith's countervailing evidence is most apparent and most significant in terms of determining whether removal was or was not a reasonable penalty. And certainly, you demonstrated that removal was not warranted. And the Board did discuss all of the Douglas factors in its analysis of whether removal was an appropriate penalty, right? It referred to them, Judge. I certainly think they were not fully discussed and properly analyzed, but there was reference to the factors. And it would preserve the balance of my time here. Government, please. Good morning. May it please the Court. The Court should affirm the Board's decision sustaining GSA's removal of Mr. Smith and rejecting his reprisal defense. The Board's conclusions are supported by substantial evidence. And on appeal, Mr. Smith's challenges generally revolve around the theory that the Board did not consider the full context. This is Judge Wallach. I have a couple of questions for you. In the red brief at 6, you say that GSA's Office of the Chief Financial Officer was reorganized in 2015 and Mr. Smith was given a new position description. Now, my recollection from the last case is that this was in fact done pursuant to a negotiation to settle Mr. Smith's complaints. Am I correct about that? Your Honor, you're correct. There were some grievances that Mr. Smith had filed, and as a result of that, he was given a new position description. And then as a result of his grievance, there was an email that his supervisor sent out announcing that he was in this position that was sent out some months later. But it was done pursuant to that negotiation. Am I correct? Yes, Your Honor, that's correct. Okay. Because I didn't find your passive voice presentation entirely accurate at page 6. In the blue brief at 15, Mr. Smith says that Mr. Augustus put him on a performance improvement plan. The record shows that. Exactly what performance was Mr. Smith to improve? Mr. Smith's performance in his communications with his customer organization, the public building service organization. The performance improvement plan details at appendix page 1139. The communications between Mr. Smith or from Mr. Smith to individuals outside the office of the chief financial officer, and they show that he was using disparaging language or demeaning them and not working in a customer-friendly way. And this was something that was identified in his performance evaluations in both 2014 and 2015 at appendix pages 764 and, excuse me, Your Honor, 770, where although he did get a full, he got rated 3 for his performance over communication and customer relationships, he was, it indicates that he should continue to increase his efforts to present his information in a concise, customer-friendly manner to improve overall understanding. They recommended that he took leadership and communication courses to increase his effectiveness. And so that was the basis for the performance improvement plan in June of 2016. So his non-customer-friendly was that he tended to be verbose. Is that correct? He was not just verbose, Your Honor. His supervisors testified that he prepared lengthy narratives that were not easily digestible. They left readers confused. His supervisor testified, this is at appendix pages 154 to 155, that the customers found his communications bullying. And that was the reason for the communication instructions that were put in place, which the board reviewed and concluded was a justified response to complaints about the tone and accuracy of Mr. Smith's communications and that the communication instruction was not directed or was not the result of concerns about the substance of his communications. And that's the board's opinion, appendix page 5 and note 1. Go ahead. So on appeal, Your Honors, Mr. Smith is generally arguing that the failure to follow supervisory instructions in charge 3 and the penalty of removal should not be upheld because the board did not consider the full circumstances surrounding his conduct. But to the contrary, the board did discuss the circumstances that Mr. Smith has been focusing on. First, the board considered specifically whether Mr. Smith was justified in his understanding about his position description. And the board concluded, based on the testimony of Mr. Smith's supervisors, that Mr. Smith's belief that he had sort of an unfettered authority and did not have to accept any limits on his personal autonomy, that that was not supported by the testimony or the position description. And that's the same justification that Mr. Smith relies on for both contesting the board's decision on the charge 3 as well as one of the bases that Mr. Smith cites for questioning the penalty of removal. And then the other major factor that Mr. Smith says the board did not consider was the communication instructions. However, the testimony from Mr. Smith's supervisors demonstrates that their concern was with the tone of his communications and not the substance. If we look at the initial communication instruction that was from December 10th of 2014, which is at appendix page 939, Ms. Gladman is focusing on his communications to managers outside the office of the chief financial officer. She testified in her deposition that it was a complaint about his tone that led to the communication instruction. And that's consistent with Mr. Nastassi's statements and his emails to Mr. Smith in May of 2015, where Mr. Smith mentions that he believes that the communication instruction would for some reason limit his ability to go to the OSC or the OIG. Mr. Nastassi responds and this is at appendix page 2399, that he's not intending to limit official contacts just to give structure to the way he's communicating through management. And then this is similar to Mr. Augustus' testimony that he was concerned about the lengthiness of Mr. Smith's communications and that they were not easily digestible, not really meeting the needs of the client organization. And again, that's testimony at appendix pages 154 to 155. On the day that Mr. Augustus implemented or re-implemented the communication instruction on March 17, 2016, the record indicates at appendix page 1138 that Mr. Smith had, I'm sorry, that Mr. Augustus had attended a meeting where employees from the public building service complained about Mr. Smith's communications and characterized them as not being friendly, customer friendly and not really meeting their needs. And so, in light of all of that testimony, substantial evidence supports the board's conclusion that the communication instructions were a proper attempt to monitor the tone of Mr. Smith's communications and not to substance. And so, therefore, the penalty of removal is reasonable because the board took into account all of the mitigating circumstances that Mr. Smith is citing and weighed those factors against that evidence against the seriousness of his misconduct and concluded that the penalty of removal was not unreasonable, was not totally unwarranted. Mr. Smith's discussion of the communication limitation also goes to his reprisal defense. On remand, the board considered all three car factors and found the first and second car factors weighed in favor of the government, found the third factor neutral. And the board specifically, again, considered Mr. Smith's contention that the communication instruction was evidence of a motive to retaliate. The board rejected that interpretation of the purpose of the communication instruction and, again, found that it was a reasonable approach to address the tone and nature of Mr. Smith's communications. The board also specifically addressed Ms. Foles, the deciding official's email where she said she was embarrassed. And the board cited to Ms. Foles' hearing testimony in which she explained that her concern was that he was sending an email out. This is at appendix page 752. He was purporting to speak on behalf of the organization and telling people outside his chain of command that they should ignore his supervisor's prior report. And he was concerned that he was presenting this as if he was speaking on behalf of the organization and that he was doing so in an unpolished manner, that his communication was riddled with grammar errors. And that's at appendix pages 221 to 222. And so the board found that this email was explained by Ms. Smith's concerns about the email and not any attempt to retaliate against him. As to the third factor of the Carr factors, Your Honor, the board credited Ms. Foles' testimony that there were no similarly situated employees. In Whitmore, this court recognized that the board construes similarly situated employees to be narrowly and that it must be nearly identical. In light of Ms. Foles' testimony, substantial evidence supports the board's conclusion that this factor was neutral. And the board did not conclude that that factor weighed in favor of the government. And then weighing all three factors as the board must... Can I just ask a question? This is Judge Toronto. What was the agency or administrative judge's understanding of similarly situated employees who had engaged in the kind of communications related conduct but not protected disclosures and whether such employees had been fired or what? My understanding, Your Honor, is that the extent to which employees within the agency engaged in similar misconduct, meaning... What is similar? I'm sorry, Your Honor. Yeah, what is similar? What was the agency looking for when it was looking for similar conduct? A disrespectful conduct towards the supervisor and failure to follow the supervisory charges. So the conduct that Mr. Smith was charged with, that's what Ms. Foles testified, that she was not familiar with any other employees within the agency that engaged in similar misconduct to Mr. Smith. Thank you. And so for these reasons, Your Honor, we respectfully request that the court affirm the board's decision, finding that the penalty of removal was reasonable and rejecting Mr. Smith's reprisal defense because the board's decision is supported by substantial evidence. Okay. Thank you, counsel. We have some rebuttal time. Thank you, Your Honor. Mr. Smith's position description was a negotiated resolution of a grievance, as has been discussed already. And the email announcement that went out throughout GSA, the record reflects Mr. Smith testified that, I don't want to misquote this, but to the effect that that was the proudest day of his life or certainly the proudest day of his career at GSA when that email announcement regarding his new position description was disseminated. And that was a significant day for him. And he was not removed by GSA for purported deficiencies in his communications, for writing communications that were too lengthy or not easily digestible. Certainly, I think the record reflects Mr. Smith could benefit from some proofreading, and I'm sure his communications could be improved, like virtually anyone's communication could be improved. But again, that's not why he was removed. And the record shows that he won awards in 2012 and 2013 nationwide. Apologies, Judge, I didn't realize that had been disconnected. And again, I apologize for whatever the technical issue was. But I'm ready to proceed. Go ahead. I don't think you need to apologize, but fire away. I'm not sure the last thing you heard me say, Judges, but just returning to the car factors for a moment, the Board erred in finding the CAR Factor 1 favored GSA. Here, Charges 2 and 4 have already been found not to have been sustained. One of the specifications under Charge 3 has been vacated as well. And the mitigating circumstances certainly strongly support Mr. Smith, the countervailing evidence that we've already discussed regarding his position description and the nondisclosure policy. And again, the AHA did not properly examine the context in which Mr. Smith made his communications. I'm not sure if I'm repeating myself, but I'm also not sure what previously was heard. But again, separating any issues regarding the length of Mr. Smith's communications or how easily digestible they are from the protected nature of their substance is extremely difficult. And certainly, it weighs against the agency meeting its burden to show by clear and convincing evidence that it would have removed Mr. Smith had his communications not involved in substance concerns that were protected under the WPA. And the absence of evidence under CAR 3 with regard to comparators is at GSA's peril. And the fact that they could identify no one who was engaged in similar conduct certainly cuts against them in terms of meeting their burden to show by clear and convincing evidence that they would have removed Mr. Smith absent his protected disclosures. So again, I just want to highlight that the issue here is not the quality of Mr. Smith's communications. That's not why GSA said they removed him. And he was not disrespectful to his communicators, to his supervisors as the charges, the specifications under Charge 1 allege. Again, that was Mr. Smith asserting what he believed to be his discretion and his latitude per his negotiated position description. And, you know, addressing any issues about the quality of his communications could easily have been handled in a variety of ways that did not involve a gag order on Mr. Smith's ability to communicate outright. And if there are any other questions, I'm happy to answer them. But I think that's it for my rebuttal time. Thank you, counsel. The matter will stand submitted. And that's the last case of the day. The Honorable Court is adjourned until tomorrow morning at 10 a.m.